GENERAL ELECTRIC CO. v. PHILADELPHIA ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Third Circuit. April 25, 1916.)

No. 2062.

PATENTS ⬤⟶328—ANTICIPATION—INCANDESCENT LAMP SOCKET.

The Jones patent, No. 818,253, for an incandescent lamp socket consisting of three parts, claim 1, is too broad, in view of the prior art, and void for anticipation.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the General Electric Company against the Philadelphia Electric & Manufacturing Company. Decree for defendant (226 Fed. 488), and complainant appeals. Affirmed.

Samuel O. Edmonds, of New York City, for appellant.
Howson & Howson, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The patent in suit, now owned by the General Electric Company, is No. 818,253, applied for by Walter J. Jones in December, 1900, but not granted until April, 1906. Its subject is "improvements in incandescent lamp sockets, * * * especially those used in incandescent lighting." The questions involved will be better understood after a brief statement concerning the kind of lighting referred to.

Electric light may be produced in an arc lamp or in an incandescent bulb. Both kinds of lamp may be arranged in series, but this controversy has nothing to do with arc lamps, or the arc system. In an incandescent system the current flows from one terminal of the dynamo through the filament in each bulb and returns to the other terminal. A break at any point in the circuit extinguishes every light; the current ceases to flow and the circuit is "open." The break may be in the connecting wire or in the lamp itself (meaning by "lamp" the whole structure, and not merely the bulb), but in this suit we are concerned only with accidents to the lamp. Manifestly, such accidents may occur while the current is flowing, either at night or at any other time, and the whole system will cease to operate if the bulb or the lamp is removed; the current must be shut off, and every light in the series will be put out. This problem was presented early in the art, and was solved as follows: As a lamp consists of two parts, a socket and a

glass bulb, the latter being removably attached to the former, it was clear that the bulb could be separated without disturbing the circuit if the flow of current could be somehow continued through the socket. A device for this purpose was speedily found in an "automatic line-closing contact"—hereafter called a "line-closer"—which may be made of two metallic prongs, positioned in the path of the current, that are normally in electrical contact, but are adapted to be forced apart when the bulb is pushed or screwed into the socket, and to spring back automatically into contact when the bulb is taken out. While the bulb is in place, the circuit is complete through the filament, but when the bulb is removed the prongs spring together and the circuit is maintained. Accordingly, the use of line-closers enabled a bulb to be replaced without breaking the circuit or extinguishing any other light in the series.

But a line-closer did not provide a remedy for another contingency, namely, the burning out or breaking of the filament in the bulb itself. In this event, also, the current at once ceases to flow, and every light will go out. To solve this further problem, the "film cut-out" was devised—hereafter called a "cut-out." This in effect is a switch, positioned in the path of the current above the filament, and is so made that upon the breaking of the filament a short circuit, is immediately established and the current flows along the new path without interruption. The switch has two members, nearly but not quite in electrical contact while the current is flowing normally through the filament; they are kept apart by the obstacle of a thin film or wafer of insulating, or dialectric, material. The wafer is sufficient to prevent electrical contact between the two members until the filament breaks, but as soon as this happens the current seeks the easiest path, overcomes the slight resistance of the film, establishes a short circuit, and leads the current by this road to the other lamps in the series.

In a successful system both the line-closer and the cut-out are indispensable, and both had been devised at an early period in the art. These subjects are dealt with in several patents, and each patent assumes and follows (as it must) the known characteristics of the electric current. Every device is limited to a physical structure; that is, to a particular arrangement of physical elements, embodying one or both of the two contrivances just described. A short review of the important steps that had been taken will show the point that had been reached in December, 1900.

We shall consider five patents only; and, first, No. 444,929, applied for in 1886 by the well-known electrical expert, Elihu Thomson, and granted in 1891. It was assigned to the Thomson-Houston Electric Company, the predecessor of the General Electric Company, and the device was used for several years, but, having proved unsatisfactory, was abandoned in March, 1891. The lamp had two parts, a bulb and a socket, and the bulb contemplated was to be of the ordinary incandescent type. Probably for this reason, both the line-closer and the cut-out were placed in the socket; the result being that when a bulb was to be replaced, or a new film put in, the current had to be shut off altogether. This was necessary to protect the operator, but evidently the situation was inconvenient. In order to better it, Thomson employed a bulb of special construction, having a particular kind of base

attached thereto, and transferred the cut-out from the socket to the base, thereby obviating the need of shutting off the current when a new bulb was put in. In this form the device went into more general use during the next nine or ten years, but the cost of these special bulbs was greater and increased the loss when they were scrapped. As just stated, this Thomson device had two parts, a socket containing the line-closer, and a specially made bulb whose base contained the cut-out.

The next patent to be considered, No. 348,875, to Wightman and Lemp, was applied for and granted in 1886. This device also had two parts, a socket, and a bulb, and each was specially constructed. The line-closer was placed in the socket, and the cut-out in the base of the bulb; in these respects the lamp was like Thomson's improvement. But the patentees disclosed a meritorious detail which will be referred to again, namely, a particular form of spring to be used as the line-closer. This is the "beaded" form of curve, by whose use a continuous electrical contact is maintained while the metallic prongs attached to the bulb are separating the prongs attached to the socket, or are being withdrawn therefrom.

In 1889 an Italian patent was issued to Giovanni, and this also shows a socket and a bulb; the socket containing the line-closer, and the bulb containing the cut-out. Here also the springs are so shaped (although not beaded) as to close while the bulb is being removed from the socket, thus establishing a circuit between the two outside conductors before the terminals attached to the bulb are wholly withdrawn from electric connection with such conductors. In this manner the current is prevented from "arc-ing" or jumping, a feature often accompanied with danger.

The next patent is No. 455,559, applied for by Henry Ball in 1890, and issued in 1891. This lamp is substantially like Thomson's, except that the bulb has an Edison screw base instead of a special base. The socket is insulated by porcelain, and contains both the line-closer and the cut-out. Reserving for a moment the remaining patent (to Wirt), we observe that, when Jones entered the art in 1900, the course of events had been as follows: In the first instance an ordinary incandescent bulb was used, and the coacting socket was a single whole containing both the line-closer and the cut-out. This socket was dangerous and inconvenient, and was abandoned in 1891; thereafter (speaking generally) the bulb had a special form of base that contained the cut-out, while the line-closer was left in the socket.

Turning now to Wirt (No. 465,508, applied for in 1890 and granted in 1891), we find a new thought suggested to the art, namely, to add a third element to the socket and the bulb—or, rather, to make three parts out of the old two. This patent was developed while Wirt was employed by the Thomson-Houston Company, and was acquired by the General Electric Company in 1892. It did not go into commercial use, but the device is fully described, is properly in the art, and must be reckoned with. The main defense below and in this court rests upon the alleged anticipation of Jones by Wirt, and the disclosure of the patent must therefore be examined with care. Wirt's object was

to improve "cut-outs for incandescent lamps," and the device he described was intended—

"to provide an automatic short-circuiting device for incandescent lamps operated in series. * * * It consists of a spring attached to one of the terminal pieces of the lamp and bearing by its resiliency against the opposite terminal, from which, however, it is normally insulated by means of a small piece of paper. This paper is a sufficient insulation under normal circumstances to prevent electrical connection between the opposite terminals of the lamp; but under abnormal conditions, occasioned by a breakage of the carbon or other accident to the lamp, this paper will be perforated by the increased potential between the parts on opposite sides of it, and the spring will then come into positive engagement with the metal and form a short circuit for the lamp."

Having thus described the well-known function of a cut-out, he turns to his particular object, namely, a special form of construction, and says that in practice he might apply the construction directly to a lamp (meaning a bulb), or—and here is the new thought—"I may provide *an independent piece* adapted to be included between the base of the lamp and the lamp-socket, which contains the short-circuiting device or cut-out above described." He then describes the form that is to be applied directly, and shows it in the usual two parts—a socket and a bulb—the socket containing a line-closer, and the bulb having a special base containing his cut-out. He then takes up in turn his new thought, and illustrates it in Figs. 4 and 5. Evidently what he had in mind in this alternative construction was the use of an ordinary incandescent bulb, and he thus describes the use of what he calls an "independent piece," or an intermediate piece," or a "separable piece":

"In Figs. 4 and 5, **K** represents an independent piece adapted to be attached to lamps which have not been provided with my cut-out. It is provided on one side with contacts corresponding to the contacts of the lamp-socket, so

that the lamp may be attached to it just as it is ordinarily attached to its socket. On the other side, piece $K$ has a receiving screw-socket and a contact-ring corresponding to the similar parts $D$ and $E$ of the lamp-base, so that it may enter the lamp-socket just as the lamp itself might do. By this means my cut-out is made as an independent piece adapted to be inserted between the lamp and its socket. In this form I have shown the piece $K$ as composed of two short concentric cylinders $R$ and $S$, separated from each other by an insulating-ring $T$. The part $R$ has upon one side a screw adapted to enter the screw-socket $D$ in the base of the lamp, and at the other end it is formed into a screw-socket corresponding to $D$, and adapted to enter the lamp-socket just as the part $D$ might do. The outer cylinder $B$ forms a structural support, and at the same time is adapted to connect with ring $E$ and also take the place of said ring to make contact in the socket. The spring $F$ in this case is attached to interior cylinder $R$, and is spring-pressed against cylinder $S$, but insulated therefrom by a paper film, as in the former case.

"The device which I have thus described forms a neat and effective cut-out for a series lamp by making but a slight change in the lamp as at present constructed, and, if necessary, no change whatever."

And claim 5. broadly claims this combination in terms that seem to read clearly on the device of Jones.

The complete lamp contemplated by Wirt consists of three parts, each distinct and separable from the other two—first, the ordinary incandescent bulb carrying a filament; second, the independent piece containing the cut-out; and, third, the socket containing the line-closer. In other words, he divided the socket into two parts, an upper and a lower, each part having a distinct function. One part receives the current and carries the line-closer; the other part transmits the current and carries the cut-out. The cut-out is put in the independent part, and being thus detached from the base of the bulb is saved for further use when the bulb is scrapped. And the line-closer is put in the other part of the old socket, for the Thomson device had shown the danger and inconvenience of assembling the line-closer and the cut-out in the same member. The cut-out was put in a new member, and this was separable both from the bulb and from the other part of the socket.

It is true that this suggestion did not bear commercial fruit, and Wirt himself (being now in the plaintiff's employ) depreciated this form of his own device. But the fact seems to be this: The new member was unsatisfactory, not because it was independent, or intermediate, but for other reasons. It was small, and it was not insulated; sometimes it would bind, and removing it was then inconvenient and dangerous, while similar objections attended the replacing of a film. And it was of metal, a conductor of current, but of course there would be no invention in substituting porcelain or some other nonconductor. Jones uses porcelain for the second and third members of his combination, and no doubt this is a beneficial change; but it does not rise to the dignity of invention, the function of the member remaining the same—to say nothing of the prior use of porcelain in the art. Now, although Wirt testified that his intention was to make the independent or intermediate member "a permanent part of the lamp," to be screwed upon the base "never to be divorced therefrom while the lamp remained usable," the patent contains no such statement, but, on the contrary, refers to the

separableness of that member, and shows a separable construction. As it seems to us, the situation is plain enough; for the first time Wirt disclosed a three-part structure, the function of each part being independent, and the position of the cut-out being in the new member.

This brings us to the patented device in suit, which has been manufactured and sold since 1901, and has had a considerable commercial success. It has been in strong hands, and this may have had something to do with its increasing sale. No doubt, also, its success has been helped by the growing use of the incandescent series, due at least in part to the successful employment of current regulators about 1900, and to the general use of the tungsten filament since 1910. But its success is probably due in part also to its own merits, and we do not wish to depreciate it. In our opinion, however, it is not entitled to the commanding place in the art that is claimed for it. It is a three-part device, and its scope will appear in the following paragraphs from the specification:

"My invention relates to sockets for incandescent lamps, and especially those used in series incandescent lighting. In such a system it is necessary to provide some means for keeping the circuit closed in case a lamp burns out or is removed from its receptacle. Moreover, it is highly desirable to provide such an arrangement of contacts that there will be no danger of an arc when one removes the socket from the receptacle. These objects I accomplish by the invention which forms the subject of the present application. I provide a receptacle with spring-contacts which remain closed until the spring-contacts on a lamp socket are thrust in between them. The lamp-contacts are normally separated by a piece of insulation of low dielectric strength, so that it will break down and shunt the lamp in case the lamp-filament breaks or burns out. The spring-contacts on the lamp-socket are so arranged that when the socket is withdrawn from the receptacle said springs remain in engagement with those on the receptacle until after the latter have closed together, thus preventing the formation of an arc.

"The receptacle is composed of a disk $A$ of insulating material, such as porcelain, having a central hole $a$ and oppositely-arranged grooves $a'$ running from said hole toward the edge of the disk. In each groove is received one end of a flat metal spring-contact $B$, which is fastened by a screw $C$ and has also a screw $D$, provided with a nut $d$ for attaching the line-wire terminals. Each spring has a bead $b$ and an inclined end $B'$, said ends being normally in contact when no lamp is in circuit, as shown in Fig. 3.

"The lamp-socket $E$, of porcelain or the like, contains the usual contacts $e$ $e'$ for the lamp-terminals, each in electrical connection with a flat metal spring $F$ projecting from the bottom of the socket. Each spring has a bead $f$ and an inclined end $f'$, said ends clamping between them a flat piece of insulation $G$, such as paper, silk, or the like. The bottom of the socket has a protecting washer $H$, of rubber or the like, to keep the socket from chipping when it is pushed against the receptacle.

"When the lamp-socket is out of the receptacle, the spring-contacts $B$ automatically keep the circuit closed. When a lamp $I$ is to be cut into the circuit, it is inserted into the socket $E$, whose springs $F$ are then thrust in between the springs $B$, making firm contact therewith before the ends $b'$ of the spring are separated. When the socket has been pushed home, the beads $b$ lie in the beads $f$, and not only securely retain the socket in place, but make a good electrical connection between the line-terminals and the lamp-terminals, the ends $b'$ of the spring $B$ being widely separated, as shown in Fig. 5. The insulation $G$ prevents any short-circuiting of the lamp.

"If the lamp-filament breaks or burns out the current breaks down the insulation $G$ and closes the circuit between the springs $F$. When the lineman removes the socket to replace the insulation cut-out, the springs $B$ come together before the springs $F$ have separated from them, as indicated by the

dotted lines in Fig. 3, so that no dangerous arc can form, nor is the lineman in danger of getting a shock from the line. A further protection is afforded by the fact that the contacts are entirely hidden when the socket is in place. Moreover, since the socket must be completely removed before the cut-out $G$ can be renewed, all liability of a short circuit through the lineman is avoided."

Only one of the eight claims is in issue:

"In series incandescent lighting, a receptacle having automatic line-closing contacts, and a lamp-socket adapted to receive an ordinary incandescent lamp therein and carrying co-operating contacts normally separated by insulation of low dielectric value."

This claims broadly a three-part device, namely: (1) An ordinary incandescent bulb; (2) a member containing a line-closer; and (3) a member containing a cut-out. It is the breadth of this claim that is objectionable, and in view of Wirt, we think it cannot be sustained. Indeed, the indebtedness of Jones to the older patents lies on the surface. He is indebted to Wightman and Lemp for the excellent, beaded, prong-like springs, used in his line-closer, and also in his cut-out. His socket is an ordinary Edison socket with screw shell and center-contacts, and is held in place by the Wightman prongs. The socket-piece is thrust into the third or receptacle piece by a straight push inward just as a lamp is thrust into the Wightman socket; and a bulb is screwed into the shell of the Jones socket just as an Edison bulb is always inserted. His line-closer is where Thomson put it; he arranges it as Wightman and Giovanni suggested; his third member comes from Wirt, and contains the cut-out; and he makes the whole device comparatively safe by the free use of porcelain as an insulating material. We refrain from going into the particular device, and we intimate no opinion concerning

the other seven claims. All we are called upon to decide is that the first claim is too broad to be sustained, and must therefore be declared invalid.

We have had some difficulty in following the arguments, owing to the different, and sometimes the confusing, meanings that have been given to the terms "socket," "receptacle," and "intermediate part"; and for this reason we have avoided the use of "receptacle," and have tried always to apply the same word to the same part.

The decree is affirmed.